UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
Alexander H. Hyatt,
                    *Appellant*,

                                        **MEMORANDUM & ORDER**

          -against-                     20-cv-5037 (KAM)

Wilmington Savings Fund Society, FSB,
Doing Business as Christiana Trust
Not in Its Individual Capacity, But
Solely as Trustee for BCAT 2014-11TT;
Selene Finance, LP; J and D
Securitized Investments, LLC,
                    *Appellees*.
---------------------------------X
Alexander H. Hyatt,
                    *Appellant*,


          -against-                     20-cv-5159 (KAM)
                                        21-cv-0619 (KAM)
Robert J. Musso,
                    *Appellee*.
---------------------------------X
Alexander H. Hyatt,
                    *Appellant*,


          -against-                     21-cv-1041 (KAM)

Internal Revenue Service
                    *Appellee*.
---------------------------------X
**MATSUMOTO, United States District Judge:**

          Between October 1, 2020 and January 22, 2021, Judge

Nancy Lord of the United States Bankruptcy Court for the Eastern

District of New York (the "Bankruptcy Court") issued four orders

concerning *pro se* Appellant Alexander H. Hyatt's ("Mr. Hyatt")

voluntary Chapter 7 bankruptcy (Bankr. Dkt. No. 19-46250-NHL,

ECF No. 1, Chapter 7 Voluntary Petition for Individuals) and

related adversary proceedings: (a) two orders, respectively

issued on October 1, 2020 and January 20, 2021 (Bankr. Dkt. No.
20-1024-NHL, ECF No. 23, Oct. 1, 2020 Tr. and Bankr. Dkt. No.
20-1085-NHL, ECF No. 15, January 20, 2021 Tr.), dismissing two
adversary proceedings (Bankr. Dkt. Adv. Proc. No. 20-1024-NHL
and Bankr. Dkt. Avd. Proc. No. 20-1085-NHL) Mr. Hyatt brought
against his creditors; (b) order dated October 1, 2020 (Bankr.
Dkt. No. 20-1024-NHL, ECF No. 23, Oct. 1, 2020 Tr.) holding Mr.
Hyatt in contempt for failing to turn over his remaining cash to
the bankruptcy trustee; and (c) order dated January 22, 2021
(Bankr. Dkt. No. 19-46250-NHL, ECF No. 109, Jan. 22, 2021 Tr.)
compelling Mr. Hyatt to cooperate in the sale of his property by
allowing the bankruptcy trustee's agent to inspect and
photograph Mr. Hyatt's property.  Presently pending before this
Court are Mr. Hyatt's appeals from each of the four orders of
the Bankruptcy Court.[1]  For reasons set forth below, this Court
AFFIRMS the orders of the Bankruptcy Court and DISMISSES all
four of Mr. Hyatt's appeals.

## BACKGROUND

---

[1] The Court notes that Mr. Hyatt filed motions requesting that this Court
grant preliminary injunctions and stay all proceedings in Bankruptcy Court
pending Mr. Hyatt's appeals of the four Bankruptcy Court orders.  On July 30,
2021, this Court denied Mr. Hyatt's outstanding motions in the District Court
to stay Bankruptcy Court proceedings pursuant to Fed. R. Bankr. P. 8007(b).
(*See* Dkt. No. 20-cv-5037, Dkt. Order July 30, 2021; Dkt. No. 20-cv-5159, Dkt.
Order July 30, 2021; Dkt. No. 21-cv-0619, Dkt. Order July 30, 2021; Dkt. No.
21-cv-1041, Dkt. Order July 30, 2021.)

On October 16, 2019, Mr. Hyatt, proceeding *pro se*, filed a voluntary Chapter 7 bankruptcy petition in the Bankruptcy Court.  (Bankr. Dkt. No. 19-46250-NHL, ECF No. 1, Chapter 7 Voluntary Petition for Individuals.)[2]  Five creditors filed claims in Mr. Hyatt's bankruptcy case, including creditors Wilmington Savings Fund Society, FSB and Selene Finance, LP (the "Financing Parties")[3] and the Internal Revenue Service (the "IRS").  (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-3, Financing Parties' Motion to Dismiss, Exhibit I – Hyatt Petition for Bankruptcy at 4.)  Robert J. Musso ("Trustee") was appointed as trustee of Mr. Hyatt's bankruptcy estate.  (*See* Dkt. No. 20-cv-5159, ECF No. 13, Trustee's Brief at 3.)  Before this Court are the Bankruptcy Court's orders on appeal involving one order granting a motion to dismiss by the Financing Parties (Dkt. No. 20-cv-5037), two motions by the Trustee (Dkt. No. 20-cv-5159 and Dkt. No. 21-cv-0619), and one order granting a motion to dismiss Mr. Hyatt's challenge to the proof of claim by the IRS (Dkt. No.

---

[2] Where the parties failed to provide the relevant documents or docket citations, the Court located the multiple bankruptcy dockets related to the Chapter 7 bankruptcy case and adversary proceedings and will be referring to them for its *de novo* review.  *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (courts can "look to public records . . . in deciding a motion to dismiss".)  For purposes of clarity, the dockets related to the appeals before this Court are cited as "Dkt No.," and the underlying bankruptcy dockets are cited as "Bankr. Dkt. No."

[3] During the pendency of Mr. Hyatt's appeals to this Court, Wilmington Savings Fund Society, FSB and Selene Finance, LP transferred ownership of Mr. Hyatt's loan to creditor J and D Securitized Investments, LLC, who have joined Wilmington Savings Fund Society, FSB and Selene Finance, LP as appellees and a part of the "Financing Parties" in this instant matter. (Dkt. No. 20-cv-5037, ECF No. 12, Appellee's Brief at 6.)

21-cv-1041).  This Court sets forth the background relevant to those orders in turn.

    I.   <u>The Financing Parties (Dkt. No. 20-cv-5037)</u>

    On May 7, 1990, Mr. Hyatt executed a Note and Agreement with the predecessors in interest of the Financing Parties, to enter into a loan for the amount of $47,700.  (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-3, Financing Parties' Motion to Dismiss, Exhibit A - Loan Documents.)  The Note and Agreement provided the predecessors of the Financing Parties a security interest in collateral consisting of 133 shares of Hampshire Arms Owners Corp. ("Collateral"), a Brooklyn residential cooperative, that Mr. Hyatt owned.  (*Id.*)  The Note and Agreement, signed by Mr. Hyatt, also included a clause titled, "Lender's Right to Assign," in which Mr. Hyatt acknowledged that "[t]he Lender shall have the right to assign this Agreement and the collateral held as security, and all of its right, title and interest under the Agreement and in the collateral without my consent."  (*Id.* at 16).

    Several transactions resulted in the Note and Agreement being assigned to the Financing Parties.  At the outset, the Greater New York Savings Bank was the creditor that perfected a security interest in the Collateral.  (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-3, Financing Parties' Motion to Dismiss, Exhibit B – UCC Financing Statement dated January 5,

1990.)  In 2006, the Note and Agreement and Collateral were subsequently transferred to Astoria Bank, by way of a merger of the Greater New York Savings Bank and Astoria Federal Savings & Loan Association, and an UCC Cooperative Addendum was recorded with the New York City Department of Finance Office of the City Register ("City Register") on January 10, 2006.  (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-5, Financing Parties' Motion to Dismiss, Exhibit C – UCC Cooperative Addendum dated January 10, 2006.)  On April 3, 2015, a UCC Financing Statement Amendment was recorded with the City Register by creditors, in which Astoria Bank assigned its interest in Mr. Hyatt's Note and Agreement and Collateral to the Financing Parties, by attaching an allonge to the Note and Agreement and UCC Financing Statement Amendment.  (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-6, Financing Parties' Motion to Dismiss, Exhibit D – UCC 3 Assignment dated April 2, 2015.)

On October 3, 2015, Mr. Hyatt failed to make the necessary loan payments required by the Note and Agreement, defaulting on the loan.  (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 1, Appellant's Motion for Adversary Proceeding, ¶¶ 10-11 and Exhibit A, Letter from Selene Finance, LP*; see also* Bankr. Dkt. No. 20-1024-NHL, ECF No. 23, Oct. 1, 2020 Tr. at 17.)

Mr. Hyatt proceeded to engage in a series of correspondence with his creditors.  As Mr. Hyatt told the

Bankruptcy Court, "on or about October 4, 2015," he sent a due diligence request for information to Astoria Bank, who he understood to be the servicer of his mortgage, to inquire who the owner of his mortgage was. (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 1, Appellant's Motion for Adversary Proceeding at ¶ 7.) Astoria Bank responded on November 1, 2015, with the UCC Financing Statement Amendment regarding the Financing Parties, entered with the City Register earlier that year. (*Id.* at ¶¶ 8-10.) In his correspondence, Mr. Hyatt also said that in 2014, he had received notices from Astoria Bank and Selene Finance, LP notifying him that the servicing of his loan would be transferred from, Dovenmuehle Mortgage, Inc., a mortgage subservice of Astoria Bank, to Selene Finance, LP. (*Id.* at ¶¶ 17-22.) Mr. Hyatt states that, around April 20, 2015, he sent the Financing Parties a request for information, asserting that the prior correspondence lacked "a clear chain of title from the Original Creditor." (*Id.* at ¶ 24.) The Financing Parties responded to Mr. Hyatt with the UCC Financing Statement Amendment and the allonge transferring payments owed from Astoria Bank to the Financing Parties. (*Id.* at ¶ 25.)

Throughout his correspondence with various creditors, Mr. Hyatt denied that he was in default. (*Id.* at ¶ 28.) He does not acknowledge that his late payment resulted in the

default on his loan.  Mr. Hyatt contends that "no party…had provided information showing who the Secured Party is."  (*Id.*)

During Mr. Hyatt's default in payment, the Financing Parties scheduled non-judicial sales of the Collateral over a period of four years, from September 10, 2015 to October 17, 2019.  (*See* Dkt. No. 20-cv-5037, ECF No. 12, Appellee's Brief at 4-6.)  In those four years, Mr. Hyatt filed various stays of the non-judicial sales of the Collateral in New York state court.  (*Id.* at 4-6.)  The last, and fourth, non-judicial sale of Mr. Hyatt's property was scheduled for October 17, 2019.  (*Id.* at 6.)  On October 16, 2019, one day before the scheduled non-judicial sale of Mr. Hyatt's property, Mr. Hyatt filed a voluntary Chapter 7 petition in Bankruptcy Court.  (*Id.*)  The fourth non-judicial sale of the Collateral was again stayed.  (*Id.*)  The Financing Parties filed a proof of claim in the amount of $45,759.81 on January 10, 2020.  (Bankr. Dkt. No. 20-1024-NHL, ECF No. 23, Oct. 1, 2020 Tr. at 20-21.)

On March 3, 2020, Mr. Hyatt brought an adversary proceeding while in bankruptcy against the Financing Parties, challenging their proof of claim and seeking judgment from the Bankruptcy Court that he did not owe them money ("Financing Parties' Adversary Proceeding").  (*See* Dkt. No. 20-cv-5037, ECF No. 1-4, Bankruptcy Documents.)  Mr. Hyatt, as he did in his state court petitions, again contended that the Financing

Parties lacked chain of title and legal authority and used
fraudulent documentation to sell the Collateral.  (*See generally*
Bankr. Dkt. No. 20-1024-NHL, ECF No. 1, Appellant's Motion for
Adversary Proceeding.)  Mr. Hyatt accused the Financing Parties
of perpetrating a fraud against him and sought to have them
criminally sanctioned.  (*Id.*; *see also* Dkt. No. 20-cv-5037, ECF
No. 11, Appellant Brief; Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-
3, Financing Parties' Motion to Dismiss, Exhibit E – State
Action 1 (2015) and Exhibit G – State Action 2 (2017).)

On October 1, 2020, the Bankruptcy Court read into the
record its decision to dismiss Mr. Hyatt's adversary proceeding
against the Financing Parties (the "October 1, 2020 Order
Dismissing the Adversary Proceeding against the Financing
Parties").  (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 23, Oct.
1, 2020 Tr.)  At this hearing, the Bankruptcy Court included the
factual background and procedural history of Mr. Hyatt's state
court and bankruptcy proceedings, his contentions against the
Financing Parties, and the bases for dismissing Mr. Hyatt's
claims.  (*Id.* at 15-31.)  On October 6, 2020, the Bankruptcy
Court entered an order formalizing the decision read into the
record at the October 1, 2020 hearing.  (*See* Dkt. No. 20-cv-
5037, ECF No. 1-2, Order Dismissing Complaint.)  In dismissing
Mr. Hyatt's adversary proceeding against the Financing Parties
under *res judicata* principles, the Bankruptcy Court found that

Mr. Hyatt had brought a nearly identical case in New York
Supreme Court against the Financing Parties, raising the same
claims. (Bankr. Dkt. No. 20-1024-NHL, ECF No. 23, Oct. 1, 2020
Tr. at 27-29.) The Bankruptcy Court also considered Mr. Hyatt's
claims on the merits and concluded that the Financing Parties
properly had been assigned the Note and Agreement. (*Id.* at 24-
25.) With regard to Mr. Hyatt's first cause of action
challenging the Financing Parties' proof of claim, the
Bankruptcy Court noted that Section 502(a) of the Bankruptcy
Code provides that proof of claim is allowed unless a party-in-
interest objects to it and provides the statutory authority,
which the Bankruptcy Court concluded that though Mr. Hyatt
objected to the proof of claim, he did not provide any statutory
authority. (*Id.* at 24.) The Bankruptcy Court also noted that
the "first paragraph of the security agreement states that the
plaintiff gave the lender a 'continuing security interest-
mortgage lien'" and all rights and interests in the shares and
proprietary lease were referred to or included in the loan
documents and Note and Agreement. (*Id.* at 25.) The Bankruptcy
Court rejected Mr. Hyatt's challenge to the use of the word
"mortgage" as a basis to dismiss the Financing Parties' proof of
claim and dismissed the First Cause of Action (*id.*), for failure
to state a claim under Fed. R. Civ. P. 12(b)(6). The Bankruptcy
Court also dismissed Mr. Hyatt's Second and Third Causes of

Action, alleging that the Financing Parties lacked an enforceable security interest due to fraud and other defects, on grounds of *res judicata*. (*Id*. at 25-29.)  The Bankruptcy Court also found that the Financing Parties' security interest in the Collateral remained perfected and that their proof of claim was valid. (*Id*. at 24; 29-30.)  Finally, the Bankruptcy Court denied Mr. Hyatt's motion for sanctions and dismissed the adversary proceeding against the Financing Parties. (*Id*. at 30-32.)

On October 19, 2020, Mr. Hyatt appealed from the Bankruptcy Court's October 1, 2020 Order Dismissing the Adversary Proceeding against the Financing Parties. (*See* Dkt. No. 20-cv-5037, ECF No. 1, Notice of Appeal.)  Mr. Hyatt filed a motion for a preliminary injunction before this Court on April 29, 2021. (*See* Docket 20-cv-5037, ECF No. 5, Motion for Preliminary Injunction.)  The Court denied Mr. Hyatt's first motion for a preliminary injunction on May 24, 2021. (Dkt. No. 20-cv-5037, Dkt. Order, May 24, 2021.)  On July 14, 2021, Mr. Hyatt filed a second motion for preliminary injunction seeking a stay of the Bankruptcy Court's October 1, 2020 Order Dismissing the Adversary Proceeding against the Financing Parties. (*See* Dkt. No. 20-cv-5037, ECF No. 1-13, Second Motion for Preliminary Injunction.)  Mr. Hyatt also filed a Memorandum of Law in support of his appeal on July 14, 2021. (*See* Dkt. No. 20-cv-

5037, ECF No. 1-14, Memorandum in Support.)  The Financing

Parties filed their opposing appellate brief on July 23, 2021.

(*See* Dkt. No. 20-cv-5037, ECF No. 12, Appellee's Brief.)  This

Court denied Mr. Hyatt's second motion for a preliminary

injunction on July 30, 2021.  (Dkt. No. 20-cv-5037, Dkt. Order,

July 30, 2021.)  Mr. Hyatt filed a reply brief on August 24,

2021.  (*See* Dkt. No. 20-cv-5037, ECF No. 17, Appellant's Reply.)

II. <u>Trustee's Motions (Dkt. No. 20-cv-5159 (turnover of</u>
<u>funds) & Dkt. No. 21-cv-0619 (inspection of property))</u>

Mr. Hyatt's appeals involving the Trustee pertain to

one order of contempt that the Bankruptcy Court issued to

address Mr. Hyatt's ongoing non-compliance with its orders to

turn over his funds to the Trustee and another order to permit

the Trustee to inspect and photograph Mr. Hyatt's apartment.

On October 1, 2020, at the same hearing in which the

Bankruptcy Court's October 1, 2020 Order Dismissing the

Adversary Proceeding against the Financing Parties was entered,

the Bankruptcy Court also read into the record its decision to

hold Mr. Hyatt in contempt of court orders for failing to turn

over funds to the Trustee.  (*See* Bankr. Dkt. No. 20-1024-NHL,

ECF No. 23, Oct. 1, 2020 Tr.)  On October 5, 2020, the

Bankruptcy Court entered an order formalizing its decision from

the bench on October 1, 2020 to hold Mr. Hyatt in contempt for

not complying with a March 8, 2020 order to turn over funds to

the Trustee (the "October 1, 2020 Order to Turn Over Funds.")
(*See* Dkt. No. 20-cv-0519, ECF No. 1-2, Order Holding Debtor in
Contempt for Failing to Turn Over Cash Money to the Trustee.)

At the October 1, 2020 hearing, the Bankruptcy Court
noted that on March 8, 2020, the Bankruptcy Court had granted
the Trustee's motion for an order directing Mr. Hyatt to turn
over funds in the amount of $17,000 to the Trustee. (*See* Bankr.
Dkt. No. 20-1024-NHL, ECF No. 23, Oct. 1, 2020 Tr.at 6, 10.) On
August 3, 2020, the Trustee filed a motion for an order holding
Mr. Hyatt in contempt for failing to comply with the March 8,
2020 order. (*Id.* at 6.) The Bankruptcy Court then found that,
since its March 8, 2020 order to turn over funds, Mr. Hyatt had
spent some of the $17,000, leaving him with remaining funds of
$10,240. (*Id.* at 12-13.)

At the October 1, 2020 contempt hearing, the Bankruptcy
Court explained that Mr. Hyatt had appeared before the
Bankruptcy Court multiple times before the March 8, 2020 order
and that he had been given clear directions to turn over the
funds to the Trustee and had been warned that, were he not to
comply, he would be held in contempt. (*Id.* at 9-10, 12.) Mr.
Hyatt acknowledged that he had been warned by the Bankruptcy
Court that he would be held in contempt if he did not comply
with the Bankruptcy Court's order to turn over the funds to the
Trustee. (*Id.*) The Bankruptcy Court then ordered Mr. Hyatt to

deliver the remaining $10,240 to the Trustee by October 8, 2020, and imposed sanctions of $50 per weekday after October 8, 2020, until the $10,240, plus any sanctions accrued, were delivered to Trustee.  (*Id*. at 13-14.)  The Bankruptcy Court ruled that the difference between the $17,000 and $10,240 would be deducted from Mr. Hyatt's homestead exemption.  (*Id*.)  This Court has not been advised whether Mr. Hyatt delivered any of the remaining funds to the Trustee.

On October 21, 2020, Mr. Hyatt filed an appeal of the Bankruptcy Court's October 1, 2020 Order to Turn Over Funds and, separately, two motions seeking a stay or injunction of all actions by the Trustee pending Mr. Hyatt's appeal of the Bankruptcy Court's October 1, 2020 Order.  (*See* Dkt. No. 20-cv-05159, ECF No. 1, Notice of Appeal; ECF No. 6, Motion for Preliminary Injunction; ECF No. 10, Second Motion for Preliminary Injunction.)  This Court denied both motions for a preliminary injunction.  (*See* Dkt. No. 20-cv-5159, Dkt. Order May 24 30, 2021 and Dkt. Order July 30, 2021).  On July 14, 2021, Mr. Hyatt filed his brief for the appeal of the October 1, 2020 Order to Turn Over Funds (*see* Dkt. No. 20-cv-5159, ECF No. 11, Appellant's Brief), and the Trustee filed his responsive brief on August 12, 2021 (*see* Dkt. No. 20-cv-5159, ECF No. 13, Trustee's Brief).

On January 22, 2021, the Bankruptcy Court entered an order directing Mr. Hyatt to cooperate with Trustee by allowing representatives of Trustee's auctioneer to inspect and photograph his identified real property with two days' notice to Mr. Hyatt (the "January 22, 2021 Order").  (*See* Dkt. No. 21-cv-0619, ECF No. 1-2, Order dated January 22, 2021 Directing the Debtor to Cooperate with the Trustee in the Trustee's Sale of Property Owned by the Debtor.)

On February 4, 2021, Mr. Hyatt filed an appeal of the Bankruptcy Court's January 22, 2021 Order and, separately, filed two motions seeking a stay or injunction of all actions by Trustee pending his appeal of the Bankruptcy Court's January 22, 2021 Order.  (*See* Dkt. No. 21-cv-0619, ECF No. 1, Notice of Appeal; ECF No. 7, Motion for Preliminary Injunction; ECF No. 11, Second Motion for Preliminary Injunction.)  This Court denied both motions for a preliminary injunction.  (*See* Docket 21-cv-0619, Dkt. Order April 30, 2021 and Dkt. Order July 30, 2021).  On July 14, 2021, Appellant filed his brief in his appeal of the January 22, 2021 Order (*see* Dkt. No. 21-cv-0619, ECF No. 14, Appellant's Brief), and Trustee filed his responsive brief on August 12, 2021 (*see* Dkt. No. 21-cv-0619, ECF No. 14, Trustee's Brief).

The January 22, 2021 Order is the only order before this Court that concerns Mr. Hyatt's non-compliance with

14

allowing the Trustee's auctioneer access to inspect and
photograph his property.  This Court notes, however, that the
Trustee filed a motion with the Bankruptcy Court to hold Mr.
Hyatt in contempt for failing to cooperate in the inspection and
sale of the Collateral on March 8, 2021.  (Bankr. Dkt. No. 19-
46250-NHL, ECF No. 80.)  On April 22, 2021, at a Bankruptcy
Court hearing, Mr. Hyatt confirmed he had continued to refuse
the Trustee's auctioneer access to inspect and photograph the
property.  (*See* Bankr. Dkt. No. 19-46250-NHL, ECF No. 109, Apr.
22, 2021 Tr. at 5-8.)  The Bankruptcy Court held that the
Trustee had a statutory duty to inspect the property once Mr.
Hyatt voluntarily filed his Chapter 7 bankruptcy and noted that
Mr. Hyatt had been acting as his "own worst enemy" in failing to
cooperate, thereby increasing trustee and litigation expenses.
(*See id*. at 11-14.)  The judge warned Mr. Hyatt that he was in
contempt and that if he attempted to prevent the Trustee's
representative from inspecting and photographing the property,
he would be subject to monetary sanctions and the United States
Marshals would be called to assist with the inspection.  (*Id*.)
Mr. Hyatt was given thirty days to comply before sanctions would
be imposed.  (*Id*.)  Since the April 22, 2021 hearing, another
Bankruptcy Court hearing was held on April 27, 2022, though no
transcript is currently on the docket.  (Bankr. Dkt. No. 19-
46250-NHL.)  On June 24, 2022, the Bankruptcy judge issued an

order directing the United States Marshals Service to accompany the Trustee and Trustee's auctioneers during the inspection of Mr. Hyatt's property.  (Bankr. Dkt. No. 19-46250-NHL; ECF No. 113, Order Directing the United States Marshals Service to Accompany the Trustee and Trustee's Auctioneers During the Inspection of Debtor's Property.)  For purposes of clarity, however, the January 22, 2021 Order is the only order regarding Mr. Hyatt's failure to cooperate in the inspection and photographing of his property on appeal before this Court and is the only one related to the inspection of Mr. Hyatt's property this Court will review in this instant matter.

III.    The IRS (Dkt. No. 21-cv-1041)

On July 6, 2020, Mr. Hyatt filed an adversary proceeding (Bankr. Dkt. No. 20-1085-NHL) against the IRS ("IRS Adversary Proceeding") contesting the validity of the IRS's federal tax liens against his property and objecting to the IRS's proof of claim filed in his bankruptcy case.  (*See* Dkt. No. 21-cv-1041, ECF No. 1, Notice of Appeal.)  Mr. Hyatt's complaint alleged, *inter alia*, that the IRS had illegally assessed Mr. Hyatt's underlying tax liabilities, and that by filing liens as part of its effort to collect those liabilities, the IRS committed common law fraud, violated his rights under the Thirteenth Amendment, and engaged in bad faith lien filing under New York state law.  (*See* Dkt. No. 21-cv-1041, ECF No. 6,

Appellant's Brief at 5-10.)  The IRS moved to dismiss the adversary complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because Mr. Hyatt's claims were premised upon a frivolous conception of the federal taxation scheme.  (*See* Dkt. No. 21-cv-1041, ECF No. 13, Appellee's Brief at 5.)

At a hearing on January 20, 2021, the Bankruptcy Court read into the record a decision granting the IRS's motion to dismiss the adversary proceeding in its entirety, and overruling Mr. Hyatt's objection to the IRS's proof of claim and his other allegations (the "January 20, 2021 Order Dismissing the Adversary Proceeding against IRS").  (*See* Bankr. Dkt. No. 20-1085-NHL, ECF No. 15, January 20, 2021 Tr. at 5-13.)  The Bankruptcy Court concluded that Mr. Hyatt failed to state a plausible claim alleging that the IRS committed common-law fraud, and further concluded that Mr. Hyatt's claim that wage taxes are inherently fraudulent were unspecific at best and "fanciful" at worst.  (*Id*. at 16-18.)  The Bankruptcy Court also found that Mr. Hyatt failed to state a plausible claim that the IRS violated the Thirteenth Amendment's prohibition against involuntary servitude and dismissed it as frivolous.  (*Id*. at 19.)  The Bankruptcy Court rejected and dismissed Mr. Hyatt's claim that the IRS committed a bad-faith filing, because that allegation had been premised on Mr. Hyatt's assertion that the tax liabilities were illegally imposed.  (*Id*. at 9.)  The

Bankruptcy Court's order memorializing the January 20, 2021
Order Dismissing the Adversary Proceeding against IRS was
entered on February 12, 2021.  (*See* Dkt. No. 21-cv-1041, ECF No.
1, Notice of Appeal.)

On February 25, 2021, Mr. Hyatt appealed the
Bankruptcy Court's January 20, 2021 Order Dismissing the
Adversary Proceeding against IRS in this court.  (*See* Dkt. No.
21-cv-1041, ECF No. 1, Notice of Appeal.)  Mr. Hyatt also filed
two motions seeking a stay or injunction of all actions by the
IRS pending the appeal of the Bankruptcy Court's January 20,
2021 Order Dismissing the Adversary Proceeding against IRS.
(*See* Dkt. No. 21-cv-1041, ECF No. 3, Motion for Preliminary
Injunction; ECF No. 8, Dkt. Order July 14, 2021.)  This Court
denied both motions for a preliminary injunction.  (*See* Dkt. No.
21-cv-1041, Dkt. Order May 24, 2021 and Dkt. Order July 30,
2021).  Mr. Hyatt filed his appellate brief on June 24, 2021
(*see* Dkt. No. 21-cv-1041, ECF No. 6, Appellant's Brief), and the
IRS filed its responsive brief on August 18, 2021 (*see* Dkt. No.
21-cv-1041, ECF No. 13, IRS Brief).

## **STANDARD OF REVIEW**

District courts have appellate jurisdiction over
"final judgments, orders, and decrees" entered in bankruptcy
court.  *See* 28 U.S.C. § 158(a).  A Bankruptcy Court's ruling on
sanctions after entering judgment is a final order that may be

appealed.  *Lothian Oil (USA), Inc. v. Sokol*, 526 F. App'x 105, 108 (2d Cir. 2013) (citing 28 U.S.C. § 158(a)).

On appeal, a district court reviews the legal conclusions of a bankruptcy court *de novo* and its factual findings for clear error.  *See Wenegieme v. Macco*, No. 17-CV-1218, 2018 WL 334032, at *2 (E.D.N.Y. Jan. 9, 2018) (citing *Lubow Mach. Co. v. Bayshore Wire Prods. Corp.* (*In re Bayshore Wire Prods. Corp.*), 209 F.3d 100, 103 (2d Cir. 2000)); *see also* Fed. R. Bankr. P. 8013 (a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," and "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.")  "A finding is 'clearly erroneous' when, on consideration of the record as a whole, the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'"  *Bongiovanni v. Grubin*, No. 15-CV-2617, 2016 WL 4059349, at *3 (E.D.N.Y. July 28, 2016) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001)).  A bankruptcy court's award of sanctions, including findings of contempt are reviewed for abuse of discretion.  *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010).

*Pro se* pleadings are also construed liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Nonetheless, though courts must read *pro se* pleadings with "special solicitude" and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-476 (2d Cir. 2006), a complaint must plead sufficient facts, "accepted as true, to state a claim to relief that is plausible on its face." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. Similarly, a complaint insufficiently states a claim "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.*

## DISCUSSION

Upon a full review of the record, this Court concludes that the Bankruptcy Court correctly considered and applied the facts and law with regards to the four bankruptcy orders that Mr. Hyatt appeals.

I.  The Financing Parties (Dkt. No. 20-cv-5037)

The Bankruptcy Court dismissed the adversary proceeding by Mr. Hyatt against the Financing Parties for failure to state a claim and based on principles of *res judicata* because Mr. Hyatt had brought a nearly identical case in New York Supreme Court against the same defendants that was dismissed on the merits. The Bankruptcy Court, in the alternative, also considered Mr. Hyatt's claims that the Financing Parties had not been properly assigned the Note and Agreement, found that the assignments and proof of claim were valid, and dismissed his adversary proceeding against Financing Parties finding it was without merit. This Court agrees with each of the holdings in the October 1, 2021 Order Dismissing the Adversary Proceeding against the Financing Parties and affirms the Bankruptcy Court's dismissal of Mr. Hyatt's adversary proceeding against the Financing Parties.

First, the Bankruptcy judge dismissed Mr. Hyatt's complaint because she found that he had litigated the same set of facts and transactions against the Financing Parties in New York state-court proceedings in 2017, and had not prevailed on the merits. (*See* Bankr. Dkt. No. 20-1024-NHL, Oct. 1, 2020 Tr. at 27.) A first judgment will preclude a second cause of action "where the transaction or connected series of transactions at issue in both suits is the same, that is, 'whe[re] the same evidence is needed to support both claims, and whe[re] the facts

essential to the second were present in the first.'" *S.E.C. v.
First Jersey Sec., Inc.*, 101 F.3d 1450, 1463-64 (2d Cir. 1996)
(quoting *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d
Cir. 1983)).  The doctrine applies if "(1) there [wa]s a
previous adjudication on the merits; (2) the previous action
involved [the party against whom *res judicata* is invoked] or its
privy; and (3) the claims involved were or could have been
raised in the previous action." *Fequiere v. Tribeca Lending,*
14-cv-812, 2016 WL 1057000, at *17 (E.D.N.Y. Mar. 11, 2016).
The Bankruptcy Court correctly ruled that all of the factors for
applying *res judicata* were satisfied.

Upon a review of the Bankruptcy Court record and Mr.
Hyatt's claims that were brought in the New York state court
system and adjudicated on the merits, this Court affirms the
Bankruptcy Court's dismissal of the adversary proceeding against
the Financing Parties on grounds of *res judicata*. (*See* Dkt. No.
20-cv-5037, ECF No. 12-1, New York State Court Decision, March
12, 2020.)  Mr. Hyatt brought a case against the Financing
Parties in New York Supreme Court on September 10, 2015, that
was dismissed on the merits, and appealed the dismissal of that
case to the Appellate Division.  (*Id; see also* Bankr. Dkt. No.
20-1024-NHL, ECF No. 8-3, Financing Parties' Motion to Dismiss,
Exhibit E – State Action 1 (2015) and Exhibit G – State Action 2
(2017).)  In the state case, Mr. Hyatt sought to stay the sale

of his Collateral shares in the cooperative apartment.  (*Id.* at

1.)  The claims Mr. Hyatt litigated in New York state court are

substantially identical to the claims he brought in his

adversary proceeding against the Financing Parties (Bankr. Dkt.

No. 20-1024-NHL) in the Bankruptcy Court.  (*Id.* at 2.)  As the

New York appellate court found, "plaintiff's allegation that

[the Financing Parties were] not the holder of the note was not

a fact at all, and that it can be said that no significant

dispute exists regarding it."  (*Id.*)

        Mr. Hyatt does not appear to dispute that the elements

of *res judicata* are satisfied.  Mr. Hyatt instead argues before

this Court, as he did with the Bankruptcy Court, that courts

"may exercise equity powers in the bankruptcy proceedings to set

aside fraudulent claims where the issue of fraud has not been

previously adjudicated."  (*See* Dkt. No. 20-cv-5037, ECF No. 17,

Appellant's Brief at 7; *see also* Bankr. Dkt. No. 20-1024-NHL,

Oct. 1, 2020 Tr. at 29.)  In urging both the Bankruptcy Court

and this Court to review claims he previously brought in New

York state court, Mr. Hyatt relies on a quote from *Pepper v.

Litton*, 308 U.S. 295, 305 (1939), to assert that "[bankruptcy

courts' equitable powers] have been invoked to the end that

fraud will not prevail, that substance will not give way to

form, that technical considerations will not prevent substantial

justice from being done."  (*Id.*)  According to Mr. Hyatt, the

23

*Pepper v. Litton* case confirms that the Bankruptcy Court has the power and authority, *sua sponte*, to re-examine the allegedly fraudulent documentation and whether the Financing Parties are valid secured parties.[4]  (*Id.* at 8.)

Mr. Hyatt's cited authorities do not support his contention.  In *Pepper v. Litton*, the Supreme Court addressed the bankruptcy court's equitable powers to enforce the fiduciary obligations of a dominant stockholder in a debtor-corporation, where that stockholder had tried to abuse his power to strategically benefit from the bankruptcy over other creditors. 308 U.S. 295 (1939).  The Supreme Court held in *Pepper* that the stockholder's perfected lien and the technical steps he took were "no obstacle to equitable relief" because they were "all designed to defeat creditors."  (*Id.* at 312-13.)  Though Mr. Hyatt invokes *Pepper* to argue that the Bankruptcy Court could "undo" a legitimate claims process in the interest of equity, nothing in *Pepper* addressed foundational principles of *res*

---

[4] In his reply, Mr. Hyatt also questions the validity of J and D Securitized Investments, LLC, as the new successor in interest of the Financing Parties without providing any facts or law to support his position.  (*See* Docket 20-cv-5037, ECF No. 17, Appellant's Reply Brief.)  This issue was not raised in the Bankruptcy Court orders, and the Court will not address Mr. Hyatt's belated contention here.  *See In re DPH Holdings Corp.*, 468 B.R. 603, 619 (S.D.N.Y. 2012) (holding that it is the district court's discretion whether to review issues raised for the first time on appeal from a bankruptcy court); *see also In re WorldCom, Inc., 07 CIV. 3408 DLC, 2007 WL 2682882*, at *8 (S.D.N.Y. Sept. 14, 2007) ("[Appellant] has waived this argument by failing to raise it adequately in the bankruptcy court.")

*judicata*, which apply where another court has already considered and rejected Mr. Hyatt's claims of fraud on the merits.

Moreover, though Mr. Hyatt asserts that his claim of fraud had not been previously adjudicated, *res judicata* would also operate where, as here, the litigant had the opportunity to litigate his fraud claim in the prior proceedings. Mr. Hyatt does not address whether or how he was deprived of the opportunity to assert a fraud claim in his New York state court case. In fact, Mr. Hyatt brought these same specific claims of fraud in New York state court where they were adjudicated against him on the merits. (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-3, Financing Parties' Motion to Dismiss, Exhibit G – State Action 2 at 5; *see also* Dkt. No. 20-cv-5037, ECF No. 12-1, New York State Court Decision, March 12, 2020.) Mr. Hyatt has asserted in New York state court, Bankruptcy Court, and continues to assert to this Court, that the Financing Parties filed unauthorized and fraudulent documents that asserted they have authority to sell the shares of Mr. Hyatt's property as a secured party. (*Id.*; *see also* Dkt. No. 20-cv-5037, ECF No. 11, Appellant Brief.) Mr. Hyatt also claims that the Financing Parties have not made out a *prima facie* case for being a secured party pursuant to New York state law. (Dkt. No. 20-cv-5037, ECF No. 11, Appellant Brief at 3.) Mr. Hyatt continues to claim that the 2015 UCC financial statement and allonge used by

Astoria Bank to assign the Note and Agreement's security
interest to the Financing Parties and were legally insufficient.
(*Id.* at 17.)  Mr. Hyatt's repeated allegations in Bankruptcy
Court regarding the assignments, the UCC financial statements
and allonge, however, only confirm that *res judicata* applies.

Second, even if the Bankruptcy Court erred in its *res
judicata* analysis, the Bankruptcy Court dismissed Mr. Hyatt's
claims on the merits, finding that the assignments, UCC
Financing Statement Amendment, and allonge were valid.  On *de
novo* review of the law, this Court affirms the Bankruptcy
Court's decision dismissing the adversary proceeding against the
Financing Parties.  The Bankruptcy Court reviewed whether the
Financing Parties' security interest in the collateral was
appropriately assigned and found that it was.  (*See* Bankr. Dkt.
No. 20-1024-NHL, Oct. 1, 2020 Tr. at 24, 29-30.)  In New York,
"the collateral assignment of a secured note, including a
mortgage note, creates a security interest in the note."  *See
Fed. Deposit Ins. Corp. v. Forte*, 463 N.Y.S.2d 844, 849, 94
A.D.2d 59, 65 (1983).  Section 9-514(b) of the Uniform
Commercial Code, which governs perfection of a security interest
in a note, states that "a secured party of record may assign of
record all or part of its power to authorize an amendment to a
financing statement by filing in the filing office an amendment
of the financing statement which: (a) identifies, by its file

number, the initial financing statement to which it relates; (b) provides the name of the assignor; and (c) provides the name and mailing address of the assignee."

In determining the circumstances under which financial documents confer holder status, New York courts have held that an allonge, if it is firmly affixed to a financial instrument, can transfer a mortgage security. *See Courchevel 1850 LLC v. Alam*, 464 F. Supp. 3d 475, 481 (E.D.N.Y. 2020); *see also CIT Bank, N.A. v. Metcalfe*, No. 15-cv-1829(MKB)(JO), 2017 WL 3841843, at *2 (E.D.N.Y. Aug. 17, 2017), report and recommendation adopted, No. 15-cv-1829(MKB)(JO), 2017 WL 3841852 (E.D.N.Y. Sept. 1, 2017)(affirming that "[e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident."); *Bank N.A. v. Bresler*, 39 Misc. 3d 1205(A), 2013 WL 1339550, at *5 (N.Y. Sup. Ct., Kings Cty. Apr. 3, 2013) (noting that "numerous trial courts throughout the Second Department have ruled that, a note secured by a mortgage is a negotiable instrument, and a transfer requires an indorsement on the instrument itself or on a paper so firmly affixed thereto as to become a part thereof, as per [N.Y. U.C.C.] § 3-202(2), in order to effectuate a valid assignment of the instrument.")

Here, the Note and Agreement Mr. Hyatt signed in 1990 specify that the creditors have the right to assign the loan and interest without Mr. Hyatt's permission.  (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-3, First Appellee's Motion to Dismiss, Exhibit A - Loan Documents at 16.)  The creditors thereafter completed the assignment documents by filing the 2006 Financing Statement Cooperative Addendum and 2015 UCC Financing Statement Amendment.  (*See* Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-3, Financing Parties' Motion to Dismiss, Exhibit B – UCC Financing Statement dated January 5, 1990; Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-5, Financing Parties' Motion to Dismiss, Exhibit C – UCC Cooperative Addendum dated January 10, 2006; Bankr. Dkt. No. 20-1024-NHL, ECF No. 8-6, Financing Parties' Motion to Dismiss, Exhibit D – UCC 3 Assignment dated April 2, 2015.)  Furthermore, the allonge at issue, only confirms what the 2006 Financing Statement Cooperative Addendum and 2015 UCC Financing Statement Amendment recorded with the City Register stated, and the allonge was properly affixed to the original loan documents. (*Id.*)  Each of the documents, individually and collectively, establish a clear chain of title from the Greater New York Savings Bank to Astoria Bank to Financing Parties.  (*Id.*)

Upon a review of the 2006 Financing Statement Cooperative Addendum and 2015 UCC Financing Statement Amendment that the parties provided to this Court, the Court is satisfied

that the assignments were conducted properly, and that the
Financing Parties or their successors have ownership over the
security interest in Mr. Hyatt's Collateral.  Thus, the Court
affirms the Bankruptcy Court's dismissal of Mr. Hyatt's
adversary proceeding against the Financing Parties.

     II. <u>Trustee's Motions (Dkt. No. 20-cv-5159 (turnover of
        funds) & Dkt. No. 21-cv-0619 (inspection of property))</u>

     This Court finds that the Bankruptcy Court correctly
ordered Mr. Hyatt to turn over his remaining cash and cooperate
with Trustee on the sale of his property.  A debtor must
"cooperate with the trustee as necessary to enable the trustee
to perform his duties under this title."  *See* 11 U.S.C. §
521(a)(3).  The duties of a Chapter 7 Trustee include
"collect[ing] and reduc[ing] to money property of the estate for
which such trustee serves."  *See* 11 U.S.C. § 704(a)(1).  A
bankruptcy trustee is, therefore, statutorily charged with
selling property belonging to a debtor and distributing to
creditors the proceeds of the sale.  Moreover, 11 U.S.C. §
363(b)(1) authorizes a bankruptcy trustee to sell property of
the estate other than in the ordinary course of business and,
importantly and relevantly, the debtor must cooperate with the
trustee in that sale.

     "A court may hold a party in civil contempt for failure
to comply with an order where (1) the order is clear and

unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the party has not been reasonably diligent in attempting to accomplish what was ordered*." In re Stockbridge Funding Corp.*, 158 B.R. 914, 917 (S.D.N.Y. 1993).

Mr. Hyatt has conceded that he had already discussed with the Bankruptcy Court, multiple times in the past, that he knew that he had to hand over the $17,000 dollars he initially was assessed to have had when he filed for bankruptcy. (Bankr. Dkt. No. 20-1024-NHL, Oct. 1, 2020 Tr. at 11-12.)  Mr. Hyatt further admits that he has refused to allow the Trustee's auctioneer access to inspect and photograph the property and continues to state that he will not allow access. (*See* Dkt. No. 21-cv-0619, ECF No. 14, Appellant's Brief at 8.)  Mr. Hyatt did not present a valid reason to the Bankruptcy Court, as to why he should not be ordered to turnover funds or cooperate in the sale of his property*.  (Id.)*  Based on this Court's review of the, this Court finds that the Bankruptcy Court correctly directed Mr. Hyatt to turn over his remaining cash to the Trustee and to allow the Trustee's auctioneer access to the property.

Mr. Hyatt may be dissatisfied with the sanctions for his conduct, but the Court also concludes that the Bankruptcy Court did not abuse its discretion in imposing sanctions on Mr. Hyatt for his contempt of the Bankruptcy Court's orders.  "'A bankruptcy court's decision regarding an award of fees and

sanctions is subject to review for an abuse of discretion.'"
*Hawkins v. Levine*, 426 B.R. 36, 40 (N.D.N.Y. 2010) (quoting
*Yarinsky v. Saratoga Springs Plastic Surgery*, 310 B.R. 493, 498
(N.D.N.Y. 2004)).  "Civil contempt sanctions may be fashioned to
coerce compliance or to compensate a complainant for his actual
losses, and are to be distinguished from criminal contempt
sanctions which are intended to punish a contemnor or to
vindicate a court's authority." *In re Stockbridge*, 158 B.R. at
918.

Here, after repeatedly warning Mr. Hyatt, the
Bankruptcy Court sanctioned Mr. Hyatt fifty dollars per business
day until he complied with the Bankruptcy Court's order to turn
over the remaining cash to the Trustee. (Dkt. No. 21-cv-0619,
ECF No. 1, Notice of Appeal.)  Moreover, despite multiple orders
and directives on the record by the Bankruptcy Court, Mr. Hyatt
continued to act in contravention of his responsibilities under
the Bankruptcy Code and court orders directing him to turn over
funds and allow access to the Trustee's representative to
inspect and photograph his property.  This Court finds that it
was well within the Bankruptcy Court's discretion to impose
sanctions to further compel Mr. Hyatt to comply with the
Bankruptcy Court's orders, as well as compensate the aggrieved
Trustee for the damages already caused by Mr. Hyatt's ongoing
non-compliance.  *See generally International Union v. Bagwell*,

512 U.S. 821 (1994) (setting forth courts' authority to impose coercive and compensatory civil contempt).  Accordingly, this Court affirms the Bankruptcy Court's October 1, 2020 Order to Turn Over Funds and the January 22, 2021 Order to cooperate with the Trustee's auctioneer.

### III.    The IRS (Dkt. No. 21-cv-1041)

The Bankruptcy Court correctly overruled and dismissed Mr. Hyatt's challenge to the IRS's proof of claim as "frivolous" and properly determined that Mr. Hyatt's assertions in his adversary proceeding against the IRS failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Mr. Hyatt challenged the IRS's proof of claim as well as the constitutionality and statutory and regulatory authorities of the federal taxation scheme, alleging that those authorities amounted to common-law fraud and a violation of the Thirteenth Amendment. (*See* Dkt. No. 21-cv-1041, ECF No. 6, Appellant's Brief at 2, 10-13.) Federal courts have repeatedly held that theories similar to those propounded by Mr. Hyatt are frivolous and thus, it is unnecessary to address such meritless arguments in detail.  S*ee, e.g., Schiff v. Comm'r*, 751 F.2d 116, 117 (2d Cir. 1984) (finding appellant's argument that the tax on wage income is unconstitutional is "wholly lacking in merit, is without any logical basis, and has been rejected countless times by the [Second Circuit] and others."); *see also Banat v. Comm'r*, 80 F.

App'x 705, 707 (2d Cir. 2003)(affirming that "'the payment of income taxes is not optional"); *Crain v. Comm'r*, 737 F.2d 1417, 1417–18 (5th Cir. 1984)("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent....The constitutionality of our income tax system—including the role played within that system by the Internal Revenue Service and the Tax Court—has long been established.")

This Court notes, for completeness, that Mr. Hyatt has a history of repeatedly instituting frivolous tax proceedings. *See, e.g.*, *Hyatt v. Metro. Transp. Auth.,* 2008 U.S. Dist. LEXIS 131421, 2008 WL 11409955 (E.D.N.Y. Sept. 19, 2008) (finding that Mr. Hyatt's claims that he was exempt from having taxes withheld from his wages by his employer was "frivolous under any definition" at *7), *aff'd*, 370 F. App'x 153 (2d Cir. 2010)); *see also Hyatt v. Commissioner*, Tax Ct. Dkt. No. 7221-07L (Apr. 24, 2007); *Hyatt v. Commissioner*, Tax Ct. Dkt. No. 26157-08 (Apr. 17, 2009); *Hyatt v. Commissioner*, Tax Ct. Dkt. No. 8771-08L (Jun. 22, 2009); *Hyatt v. Commissioner*, Tax Ct. Dkt. No. 22711-09L (Oct. 28, 2010); *Hyatt v. Commissioner*, Tax Ct. Dkt. No. 17872-18 (Sep. 4, 2019).  As Mr. Hyatt's arguments are, in all circumstances, meritless, the Court affirms the Bankruptcy Court's January 20, 2021 Order Dismissing the Adversary Proceeding against IRS.

## <u>CONCLUSION</u>

For the foregoing reasons, each of Mr. Hyatt's appeals, including adversary proceedings, and motions, are denied and dismissed.  The Clerk of Court is respectfully requested to enter judgment in favor of the appellees and close all four appellate cases and adversary proceedings.  The Bankruptcy Orders at issue in these appeals are affirmed in their entirety.  The Clerk of Court is also directed to serve a copy of this Memorandum and Order on Appellant and note service on the dockets.

**SO ORDERED.**

_____/s/_____

**Hon. Kiyo A. Matsumoto**

United States District Judge

Dated:  July 20, 2022

Brooklyn, New York